### In re CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—CONDITIONS PRECEDENT——EFFORT FOR PRIVATE AGREEMENT.

Under Laws 1901, p. 1765, c. 712, authorizing the city of New York to condemn or purchase land for the reconstruction of an approach to the Brooklyn Bridge, it is not necessary for the city, as a condition precedent to the exercise of the right of eminent domain, to make an effort to purchase the land by agreement with the owner.

2. SAME—CONSTRUCTION OF RAILROAD TRACKS—CONSENT OF PROPERTY OWNERS AND AUTHORITIES.

Under Laws 1901, p. 1769, c. 712, § 6, requiring the consent of the local authorities and the constitutional consents of property owners for the construction of any railroad track along a street in reconstructing an approach to the Brooklyn Bridge as authorized by the act, the obtaining of such consents of abutting property owners and local authorities is not a condition precedent to the condemnation of land under the act, when it is not made to appear that any railroad track is to be laid.

3. SAME—PREPARATION OF PLANS—APPROVAL BY BOARD OF ESTIMATE.

Under Laws 1901, p. 1765, c. 712, § 1, authorizing the commissioner of bridges of the city of New York to prepare and submit to the board of estimate, and with the approval of such board to adopt, plans and specifications for the reconstruction of an approach to the Brooklyn Bridge, and to select and specify such real estate as the commissioner, with the approval of the board, shall determine to be necessary for the work, and empowering the city to acquire title to such real estate by condemnation, such general plans and specifications for the improvement must be prepared by the commissioner and approved by the board of estimate as will show the court that the determination of the municipal authorities

that the land is necessary for carrying out the improvement is reasonably warranted, before the city can proceed to condemn the land.

**4. SAME.**

A resolution of the board of estimate reciting that it approves the selection and location by the commissioner of bridges of such real estate as is shown to be necessary for the construction of the approach (to the Brooklyn Bridge) according to the plans and specifications, and directing the commissioner to forward to the corporation counsel a technical description of the lands required, and directing the commissioner to prepare and submit to the board further plans and specifications for the carrying out of the improvement, does not constitute a sufficient approval by the board of estimate of the general plans and specifications for the improvement to authorize the acquisition of such lands by condemnation proceedings, under Laws 1901, p. 1765, c. 712, § 1, but merely approves the recommendation of the commissioner as to the selection of lands to be acquired for the improvement.

Appeal from Special Term, New York County.

Application by the city of New York to acquire certain real estate, under Laws 1901, p. 1765, c. 712, for the construction of a terminal on the westerly or Manhattan end of the New York and Brooklyn Bridge. From an order (91 N. Y. Supp. 987) appointing commissioners, certain property owners appeal. Reversed.

Argued before VAN BRUNT, P. J. and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Lewis L. Delafield, for appellants Johnston, Hanover, Schmidt, and Alfred Rae Storms.

Edward W. S. Johnston, for appellants Francis J. and Alfred Storms.

William J. Underwood, for appellant Ziegler.

Terry Smith, for appellants Gerken and Wanbun.

Theodore Connoly, for respondent.

LAUGHLIN, J.   This proceeding was instituted pursuant to the provisions of chapter 712, p. 1765, of the Laws of 1901, which authorizes the reconstruction of the westerly end of the New York and Brooklyn Bridge, or the construction of an extension thereof, or both such construction and extension, and authorizes the city to acquire by purchase or by eminent domain proceedings the necessary lands for that purpose.   Section 1 of the act authorizes the commissioner of bridges, subject to the approval of the board of estimate and apportionment, to prepare or cause to be prepared plans and specifications for the improvement, and to select and determine the lands necessary to be acquired therefor, and empowers the city to acquire title thereto by condemnation proceedings. Section 2 authorizes the city to contract for the construction of the improvement after the adoption and approval of the plans and specifications and the selection of the lands necessary to be acquired and the approval thereof.   Section 3 declares that the lands when acquired and the improvement when constructed shall belong to the city and be part of the Brooklyn Bridge.   Section 4 provides that the city may from time to time acquire title by purchase by consent or by eminent domain proceedings.   Section 5 authorizes

the issue of bonds to pay for the lands and improvement. Section 6 requires the consent of the local authorities and the constitutional consents of property owners for the construction or operation of any railroad track in or along a street in making the improvement. Section 7 repeals inconsistent acts, and section 8 provides that the act shall take effect immediately.

It does not appear that the consent of the local authorities or of abutting property owners to the construction of any railroad track in or along any street has been acquired, nor is it shown that the authorities were unable to agree with the property owners upon a purchase of the lands by consent, and these points are urged by the appellants as fatal to the city's right to institute this proceeding. It sufficiently appears that the city has not acquired the property by voluntary purchase, else this proceeding would 'be unnecessary. While, in this instance, the Legislature has seen fit to authorize the city to purchase the necessary property without instituting condemnation proceedings, still it is not the policy of the law to require municipal corporations, authorized to acquire property for public purposes, to make an effort, as a condition precedent, to acquire the same by voluntary purchase, as is the case with railroad corporations. The authority on the part of municipal officials to purchase without condemnation proceedings is so open to abuse, and ordinarily that is not conferred. We are of opinion, therefore, that it was not a condition precedent to the city's right to institute condemnation proceedings that it should have endeavored to acquire title by voluntary purchase.

The objection that the consent of the local authorities or of abutting property owners to the laying of railroad tracks has not been obtained is likewise untenable. It does not yet appear that any railroad track is to be laid in or along any street which will require the city's consent. Nor is it essential to the enjoyment of the land sought to be acquired for the purpose authorized by the act that such should be the case. The extension may be proper and necessary as an approach to the bridge for the use of foot passengers and vehicles without the construction of any street railroad tracks thereon.

The appellants also contend, and raised the objection by answers duly interposed, that plans and specifications for this improvement have not been prepared and approved, and that this was a condition precedent to the right of the city to acquire land by eminent domain. The decision of the question presented by this objection depends upon a construction of the statute. The only provisions of the statute material to the decision of this question are those contained in section 1, which provides as follows:

"The commissioner of bridges of the city of New York is hereby authorized to prepare or cause to be prepared and to submit to the board of estimate and apportionment of such city, and with the approval of said board by a majority vote thereof to adopt plans and specifications for the reconstruction of the westerly or Manhattan terminal of the New York and Brooklyn Bridge, or for the construction of an extension thereof by a loop system or otherwise, or for both such construction and reconstruction, for the better accommodation of pedestrians, vehicles and railroad passengers using said bridge or terminal,

which plans and specifications may also provide for the construction, maintenance and operation of railroad tracks in and upon such terminal or extension, or any part thereof, and may also provide for the location of such extension through, over or under any such streets, highways, avenues, private or public property, buildings, parks or places as said commissioner, with such approval of said board, shall determine to be the most feasible location therefor. Provided, however, that if any such extension, construction or reconstruction shall involve the appropriation or occupation of the subsurface of any street, park or public place, or if any such extension, construction or reconstruction shall involve the construction of any railroad elevated above the surface of any such street, park or public place, or any other construction, and such railroad or other construction shall in any way interfere with any rapid transit structure authorized by the board of rapid transit commissioners, then in either such case the plans and specifications for any such extension, construction or reconstruction, so far as the same shall or may interfere with any rapid transit structure authorized by the board of rapid transit railroad commissioners, then in either such case the plans and specifications for any such extension, construction or reconstruction, so far as the same shall or may interfere with any rapid transit structure, shall require the approval also of the board of rapid transit railroad commissioners for the said city. The said commissioner is also authorized, with the approval of said board of estimate and apportionment by a majority vote thereof, to select and specify such real estate, tenements, hereditaments, corporeal or incorporeal rights in the same as such commissioner with such approval of said board shall determine to be necessary for such construction or reconstruction purposes, which are hereby declared to be public uses and purposes, and the city of New York is hereby authorized to acquire title thereto by condemnation. The said commissioner is also authorized to employ and consult with 'expert engineers in the preparation of and determination of such plans, specifications and location, and to pay said engineers a reasonable compensation for such employment and consultation in the same manner as other persons employed by said commissioner are paid."

We agree with the contention of the appellants that general plans and specifications for the improvement must first be determined upon, and that the selection of the lands which the city is authorized to acquire is dependent upon the necessity therefor for the purpose of carrying out the improvement shown by such general plans and specifications. The commissioner recommended in writing to the board of estimate and apportionment a general plan and general specifications, setting forth a description of the lands which he deemed necessary therefor. The plan submitted showed the outline of the structure to be erected, indicating the construction thereon of certain railroad tracks, and the specifications showed in a general way the character of the improvement. He recommended the approval of his action, but the board, instead of adopting a resolution approving the plans and specifications as recommended, and evidently intending to reserve action upon the plans and specifications for the improvement, adopted a resolution, presented in writing by the president of the borough, reciting at the outset, "The president of the Borough of Manhattan offered the following resolution authorizing condemnation proceedings for the acquisition of the property without committing the city any further," and containing preambles reciting the action taken and recommended by the commissioner of bridges, and followed by resolutions which were unanimously adopted, as follows:

"Resolved, that the board of estimate and apportionment of the city of New York does approve the selection, specification and location by the said com-

missioner, of such real estate, tenements, hereditaments, corporeal or incorporeal rights in the same as are shown and determined to be necessary for such construction or reconstruction on the said plans and specifications or by the said descriptions; and it is further

"Resolved, that the said commissioner of bridges be and hereby is instructed to prepare and forward to the corporation counsel a technical description by metes and bounds or other proper description of such real estate, tenements, hereditaments, corporeal or incorporeal rights therein as may not now be owned by the city of New York, and may be shown or indicated on the said plans or specifications or in the descriptions hereby approved; and the corporation counsel, upon the receipt of the said technical descriptions, is hereby authorized and directed to acquire title thereto on behalf of the city of New York in the manner prescribed by law; and it is further

"Resolved, that the commissioner of bridges do hereafter, from time to time, as may be necessary, prepare and submit to this board for its approval further plans, specifications and descriptions as may be required to carry out the project hereby approved and as may be provided by law."

We are of opinion that these resolutions do not constitute an approval of the general plans and specifications for the improvement, and that they were merely intended to approve the recommendation of the commissioner as to the selection of lands necessary to be acquired for an improvement to be made under the act, the nature, character, and extent of which was to be determined in the future. The resolutions in fact fell somewhat short of an approval of the selection of the lands, for in form the selection is approved only so far as the same "are shown and determined to be necessary for such construction or reconstruction on the said plans or specifications or by the said descriptions." Although the resolutions refer to the general plans and specifications, it is evident that they are not approved, or, if approved at all, they are referred to and approved merely to the extent that they constitute a drawing, like a survey, of the lands deemed necessary; but they are not approved with reference to any part of the plan of the structure to be erected thereon. Of course, it is not essential to the city's right to institute eminent domain proceedings that plans and specifications with complete minuteness and details sufficient to award a contract for the erection of the improvement should first be prepared and approved, but it is essential that the improvement shall be planned in a general way, so that the court may see that the determination of the authorities that the land is necessary for carrying out the improvement is reasonably warranted.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements to each of the appellants appearing separately, and motion denied, with $10 costs to each of the property owners appearing separately who are appellants. All concur.